We call the case of William Bracey v. Superintendent and we will hear first from Mr. Gray. Thank you, Your Honor, and it's a pleasure to be appearing before you, even though virtually I was looking forward to this argument being in person, but we do what we can, right? Good afternoon. May it please the court. My name is Travis Gary. I'm a lawyer with KNL Gates, and I am pro bono counsel representing Mr. Bracey, the appellate in this matter. I would like to reserve two minutes for rebuttal, please. Granted. Thank you. In this matter, Mr. Bracey should not be required to obtain a certificate of appealability because he's not appealing a final order that disposes of a habeas corpus proceedings merits. If, however, this court decides that a certificate of appealability is required, one should be issued because jurists of reason would find it debatable whether Mr. Bracey's petition states a valid claim, and it's debatable whether the district court was correct in its procedural rule. Finally, in denying Mr. Bracey's Rule 60B motion, the district court abused its discretion by adding an element to the legal standard for proving a constitutional violation, an action which is contrary to clearly established law. Mr. Bracey, you just outlined what seemed like the logical order to address those questions, but at the threshold in terms of the requirements of a COA, why aren't we bound by MARIS? Under our internal operating procedures, unless there's intervening Supreme Court precedent that has clearly overruled our prior precedent, aren't we bound by the decision of the prior panel?  I would argue that there are, as the court noted in the order referring this matter to the merits panel, and also as the court noted in, I believe it was the Wilson case, we would respectfully argue that a certificate of appealability is not required because of the holdings in Mr. Bracey's Rule 60B. Before we get there, Mr. Gary, in Gonzales, it was clearly about Section 2244B3. Bracey is about a COA requirement under 2253C, and didn't Gonzales expressly leave open the question of whether the Section 2253 requirements apply in this context? It did. However, it limited the language because that was the specific issue before the court in Gonzales. But I would argue to this court, if you take the rationale that the Gonzales court and the Harbison court used, it's equally applicable in this situation. And for this reason, the certificate of appealability requirement, by its term, by the statute, by the context of the statute, is not applicable to a Rule 60B motion. So how do we get there in the first place? Just a second. Let me just interrupt you there. You say the Texas statute doesn't lend itself well to it. Are you talking about 2253C1A? Yes. Yes. So that says, quote, the final order in a habeas corpus proceeding, end quote. There's more to that. Yes. Do you think there's a difference between a proceeding and a habeas corpus petition? No. No, Your Honor. There's no difference. So a proceeding is not broader than a petition because there could be a lot of motions associated with a proceeding that are not included in the original petition. Yes. So it sounds to me, then, that in your view, in order for you to at least have some traction at a statutory level, you're asking us to read proceeding as perfectly coextensive, no more, no less than petition. No, I apologize. That is not my suggestion. I think you have to look at petition and proceeding are different, and particularly when you couple it with what the Supreme Court has said in Gonzales and Harvison. The way you get the certificate of appealability to a Rule 60B motion is by analyzing the Rule 60B motion and determining what it really is. And that's where Gonzales is. So let me just use that. Why isn't the determination of a Rule 60B motion the final order in a habeas proceeding? Because in Harvison, the Supreme Court specifically looked at the issue and said the AEDPA provisions apply to final orders that dispose of the merits of a habeas petition. And I think that was a pretty clear ruling. But the term merits is being used to distinguish it from a collateral issue. It didn't appear to be distinguishing between substance versus procedure, which is where you're asking us to go. That is correct, Your Honor. And that's where we jump back to the Supreme Court's ruling in Gonzales, which was a pretty technical ruling, looking at the language and the philosophy behind the different statutes and the time limits involved with the AEDPA. And Gonzales, in their footnote, footnote four, specifically said that if you have a – well, the whole purpose behind looking at Rule 60B in the context of the certificate of appealability is you have to determine, is it a true 60B motion or is it really nothing more than a second or successive habeas? Well, I think you're hitting on a huge difference here. I mean, like, you like Gonzales, you've directed us to Gonzales a few times, but, I mean, there's this kind of outro language that the Supreme Court uses after much of its analysis. And it says, quote, many courts of appeals have construed 28 U.S.C. 2253 to impose an additional limitation on appellate review by requiring a habeas petitioner to obtain a COA as a prerequisite to appealing the denial of a Rule 60B motion, end quote. If that was wrong, if that was – if that's – if many courts of appeal are doing it and that's just dead wrong, I mean, why do you think the Supreme Court just makes that observation? Their next line talks about the difference between a second or successive petition when Rule 60B-6 constitutes a second or successive petition. But we've got this observation right here by the Supreme Court that doesn't say – usually if they make that observation of what many courts of appeals are doing and they disapprove of it, it would be followed by some head nod or direction that it's all wrong. So what's going on? Why do they do that without any directional sense? And describing it instead as plausible and effective, which seems like it's some praise rather than a criticism of the practice. Well, I would suggest respectfully that that footnote, the language in the footnote was – That's not a footnote. That's not a footnote. I'm sorry. What I read was text. That language is the nod to future courts that this is an issue that's ripe for consideration. And the Supreme Court is essentially inviting this type of argument. Probably en banc if a court has already ruled a certain way. I mean, I don't think it's suggesting that based on this language, courts can overrule their own precedent in that space, does it? I think that's correct. Let's assume a COA is needed and look to the question whether it should be granted here. Yes, Your Honor. In that case, if this court decides that a COA is required, we suggest that one should be issued. In Slack v. McDaniel, the Supreme Court held that when a district court denies a habeas petition on procedural grounds, without reaching the merits of the underlying constitutional claim, the COA should issue if the jurist of reason would find it debatable whether the petition states a valid claim and it's debatable whether the district court is correcting its proceeding. In this case, in his Rule 60b motion, the procedural issue that Mr. Bracey challenges is the application of the statute of limitations to his habeas corpus petition. The district court denied Mr. Bracey's habeas petition as untimely. Now, Mr. Bracey's petition for a writ of habeas corpus alleged that the Commonwealth committed a Brady violation by failing to disclose the correct and full extent of plea agreements with two witnesses who testified against Mr. Bracey at trial. The Brady violation first became known to Mr. Bracey in October 2010 when his sister discovered evidence that suggested the two witnesses had obtained more than they disclosed at trial. So to that effect, it seems like the debatable correctness of the procedural question is informed in part by how debatable the underlying constitutional violation is. And whereas here, the government has put forward, identified substantial evidence from the record that might indicate that the information questioned was not material because there was sufficient impeachment evidence otherwise, have you satisfied that prong, that it's debatable as to whether there was a deficiency in the constitutional rights that are apparent through the underlying habeas petition? I would argue that we have, Your Honor. And I would refer to the Supreme Court's language in Miller L versus Cockrell and in Buck versus Davis where they distinguished between the COA stage, the question of whether a COA should be issued and the actual determination of the merits of the underlying claim. And the Supreme Court said the certificate of appealability determination doesn't require showing that the appeal will succeed. The inquiry only asks if the district court's decision is debatable. Well, I mean, doesn't that get the Judge Krause's question? I mean, isn't her question saying, look, it doesn't feel too debatable? I would argue that the debatable issue is not whether Mr. Bracey would succeed on the merits of his appeal, but on the decision that the district court made. And I do think it's important to note that the merits of Mr. Bracey's Brady petition, Brady allegations, have never been heard by anybody in the state court. The PCRA was dismissed as untimely and his habeas was dismissed as untimely. So there's never been a factual record developed into the merits of the underlying Brady claim. So here, what we argue is that the debatable issue is whether or not the district court was correct in its procedural ruling. But in that, you have to couple with the application of the statute of limitations together with the underlying analysis of Mr. Bracey with respect to his Brady claim that gets you to the application of which statute of limitations applies. Let me finish up and then I'll go. Go ahead, Your Honor. Let me explore the extent of Harbison. And if you put on one end of a continuum, the notion that expanding the scope of council's representation is a collateral issue. And on the other end is an issue that is on the merits. How do we decide what is on the merits and what is a collateral issue? Where is that in the middle of that continuum? How do we switch from one to another? Well, I would suggest, Your Honor, that it's similar to how the Gonzalez court described how to treat these motions. And if it's an on the merits determination, that is a determination that there exists or do not exist grounds entitling petitioner to habeas corpus relief. So you're actually looking at the nature of the of the allegation underlying the habeas corpus petition itself. Almost anything else, frankly, would be collateral. And it's important to know this is this. I would suggest this is not saying that it opens the floodgates for unmeritorious appeals because they're still, you know, the rule 60B provisions are still applicable. And the court still, you know, what we're talking about in that respect is simply whether or not the AEDPA's certificate of appeal ability requirement applies. So, you know, I understand that, you know, the position that, you know, the COA acts as a floodgate, so to speak. But I would argue that that Harbison would not expand that greatly. The number of cases that would come before you. Well, I suppose what I'm asking for is what is the principled reason to classify something as collateral and something else as on the merits? All right. I would fall back on what the Supreme Court has said in Gonzales that their rationale for when and how to apply the COA requirement in a habeas proceeding. Frankly, I would just argue that it makes sense. If you are looking at an issue that disposes of the underlying issue in the habeas case, or on the other hand, you know, if you're looking if the rule 60B motion is one that is attempting to get around the second or successive habeas prohibitions by adding another claim or relitigating another matter. That's a different issue. But if you have a rule 60B motion that challenges something other than, you know, a determination of whether grounds exist or don't exist on the merits. And, you know, such as the Supreme Court specifically referred to. But the entire Supreme Court's conversation or discussion of this issue. Correct me if I'm wrong. I mean, wasn't it all in the context of second or successive petition? Yeah. Yes. In Gonzales. Yeah. Yeah. Gonzales. All this stuff about on the merits and not on the merits is trying to find out if it's a second bite at the apple for purposes of second or successive, not for purposes of whether COA should issue. And so I'd like to direct you to the question I think is important for whether COA should issue, which is whether or not this rule 60B6 petition was untimely. And it strikes me that the question comes down to one of two views. One view is that Brady imposes no diligence obligation on a criminal defendant ever. And the second one is even if Brady imposes no diligence obligation on a criminal defendant ever, you still have diligence obligations that are separate apart from that in 2244 D1D to pursue a habeas petition. And so maybe if Brady imposes no diligence obligation ever, you can say, see, we weren't untimely because we didn't have a diligence obligation. But your briefing didn't answer that second scenario. And that second scenario is, hey, look, this might have been – there might not have been a diligence obligation for the Brady at the original trial. But when you want to use Brady or any other rationale as a predicate fact for getting a habeas petition under D1D, there's an obligation of due diligence. And so doesn't your client still have to satisfy that obligation regardless of whether Brady requires one? I would argue that by the terms of the statute, there is a due diligence requirement built into it. I mean, that's clear. However, I would also argue that Mr. Bracey has satisfied that requirement. And I think you hit on an important issue. I mean, what is the burden on a defendant in uncovering a Brady violation? And I think if you look at Dennis in particular, this court's holding in Dennis was pretty strong and pretty clear that there's just no due diligence requirement imposed upon a defendant in a Brady violation. At trial. I think you're right. I mean, I think that's – if that's not exactly right on Dennis, that's a close approximation. We are at a trial. I agree with you. Even other instances where a defendant has no diligence obligations at trial, we don't impose a diligence obligation on a criminal defendant at trial to determine the adequacy of their counsel representations for purposes of inadequate – in terms of inadequate assistance of counsel claims. There's no diligence obligation there. But if a criminal defendant wants to bring a separate independent assistance of counsel claim, usually through habeas, the diligence obligations of D1D apply. And so my question to you, and it went unanswered, at least in my reading of your briefs, is why don't those D1D obligations apply here as well to your client? And were they satisfied if they do? Again, I would argue that they were satisfied. So by arguing that, you're saying that they do apply, and now the argument becomes were they satisfied? I believe you can make an argument that there is a separate type of due diligence requirement that would survive even with the Brady claim. Do I take it you're arguing that there remains a diligence in terms of needing to move forward reasonably within a reasonable timeframe when information comes to the attention of a defendant or petitioner, but to the extent that there is not a due diligence requirement in connection with a Brady claim because of the serendipity of when information that was suppressed by – allegedly suppressed by the prosecution comes to light, that it really – it is coextensive with that obligation that we talked about in Dennis, whether it's at trial or we're looking at it in the habeas context. I think that's exactly right, Joanna. That's what I was trying to say. You can't put a due diligence requirement on Mr. Bracey to uncover the Brady violation. And frankly, Your Honor, I think it's – I'm not sure there's a big difference whether it's during the course of the trial versus post-trial on appeal, because all of the reasons enunciated by the court in Dennis apply just as equally. If we assume – well, not assume, but if we accept, as Dennis says, that there's no Brady obligation, there's no due diligence obligation on a defendant to uncover Brady, and when a prosecutor makes a representation that this is all there is, there's no – we just have to take him at his word, and we really can't expect a defendant to then go out and scavenge for information. That would be equally applicable in a post-trial setting, and particularly in a case here. I think it's interesting that one or two factors that the district – well, both the state court in the PCRA petition and the district court in their Rule 60B motion, or in the ruling that the habeas petition was untimely, focused on was that the two Commonwealth witnesses were subject to impeachment and cross-examination at trial. And I would argue that, frankly, that goes to Mr. Bracey's favor, because they were subject to impeachment, and the Commonwealth never corrected the record. If there were additional promises given to them that were not disclosed, why would you expect, facing the silence of the Commonwealth in the trial setting, Mr. Bracey to even think that he would have to look? Counsel, you're talking now about the merits of the Brady claim, the habeas petition. Focusing for us in the question of timeliness in the COA, we're looking merely at what's debatable. Let's assume, as we've now demonstrated, some basis for a debate, as we put these questions to you, that we reach the question of whether the district court abused its discretion. And I gather from your arguments in your briefing that you're asking us not only to hold that the denial of the motion on timeliness grounds was an abusive discretion, it seems like you're also asking us to hold that it actually should have been granted. And I'm wondering whether that's really appropriate for us, or given that Cox identified a number of factors that are supposed to be addressed in the first instance by a district court, that at some point in this analysis, we may not ultimately reach the final question. We send that back to the district court to assess. Your Honor, and in fact, that is what Mr. Bracey is requesting. We're not asking this court to reach an ultimate determination on the merits of this habeas petition. And quite frankly, we don't think a record has been developed to enable this court to do that. What we are asking is that you would vacate the district court's order dismissing the Rule 60B motion, remand back to the district court with instructions to hold or conduct a thorough inquiry into the merits of the habeas petition. But isn't there an intervening step where the district court has to consider the merits of reopening? And the district court made a decision based on timeliness, but there's an intervening step as to the reopening itself, which is really the 60B motion you want to get at. Are you asking us to address that? Or are you suggesting that if we conclude that timeliness, the timeliness basis for the district court's decision doesn't stand, that we remand to the district court to apply Cox factors? Frankly, Your Honor, what I had initially requested was that you remand, simply remand with directions for the district court to determine, to conduct an inquiry into the merits. And I probably inartfully drafted that. And what I was suggesting was, you know, that the whole, should there be a reopening and then getting to the actual merits of the habeas petition. And I think now I would argue that I believe this court could determine that the application of the requiring the due diligence inquiry or analysis as part of the calculation for the statute of limitations was improper. And you could just direct the court, the district court to proceed to a determination on the habeas petition. Mr. Gray, we've let you exceed your time substantially, but we will grant the same to Mr. Lysak, and I will return to you on rebuttal unless either of my colleagues have other questions at this time.  Thank you, Your Honor. Good afternoon, Your Honors. May it please the court, Ryan Lysak here on behalf of Appellees in this matter. Is there anywhere Your Honors would like me to start specifically? Well, we've covered a lot of ground. Perhaps we should do it in the same order, which seems rather logical. Is there a COA requirement to begin with? Appellee's position in this matter, Your Honors, is that there is a requirement for a certificate of appealability. I guess we would have to look at what he is substantively claiming in his motion. Up to date, he has rehashed the same claims, Mr. Bracey, that he's rehashed from the beginning, erased from the beginning. I do think it goes to a denial on the merits. I do think that triggers the language of being a final order in this case, and therefore triggering the requirement for a certificate, Your Honors. What about Wilson? What about our prior observation that Morris has been somewhat undermined by intervening Supreme Court case law? Yes, Your Honors. It's definitely been left—the question's been left open, but I don't think that this court's decision in Morris really kind of undermines our position in this, Your Honor. And that other 60-D motion of extending counsel's authority kind of does go a little more collateral to what has been raised in this motion that we're dealing with, which again goes to the heart of his claims that he's been raising all along. So I don't find the two cases really unworkable in that respect, Your Honor. Well, why do you think that the court questioned its continued vitality? The court definitely recognized the language from the United States Supreme Court. Of course, indulgence, Your Honor. I apologize. You know, I mean, it's still another question. I don't think it's been finally resolved one way or another. I don't, a lot of times, think the courts necessarily want to—I don't want to use the phrase overreach to kind of get into questions that aren't necessarily raised to them in that instance in the case that we're dealing with. And I would submit that in that case, that's kind of what happens. You're not suggesting that a COA is only required where the issue goes to substantive merits, and here we're dealing with the question of timeliness in a rule that's—a motion that's been dismissed on that basis. That seems procedural. So should a COA apply there? I think that, you know, we should—and this may be the government's position, but as a gatekeeping measure, the COA is a very useful tool to kind of phasing out substantive procedural issues in the first instance that, you know, we—I don't think jurors could disagree at least as to this one, as to this particular case. And I think they're helpful in the majority of cases, too, with how—not to say that prisoners shouldn't be entitled or defendants shouldn't be entitled to file anything that could possibly achieve them relief in some form that they're due, but it does kind of turn into a vexatious, frivolous motions procedure. In my admittedly limited experience dealing with this, a 60B motion is filed in a lot of cases, if not the majority, that I deal with. And I think, you know, regardless of the underlying nature, a COA should be sought and obtained prior to that APO. Oh, okay. Let me piece together what I think is one of the strongest arguments against your point, okay? And that is that the Supreme Court in Harbison says it's construing 2253c1a. So this isn't verbatim from the text. This is the Supreme Court's gloss on 2253c1a. And it says, quote, this provision governs final orders that dispose of the merits of a habeas corpus proceeding, end quote. So that's Harbison. So we've got this gloss on 2253c1c. It says, hey, look, that applies to merits. And then we come down to Gonzales, which was decided beforehand, and maybe this is in part why Harbison used the merits language, because Gonzales spent a lot of time focusing on what on the merits meant, albeit in the context of second or successive petitions. And then we have this footnote four that your opposing counsel comes down to, which says the term on the merits has multiple usages. And then at the end of that footnote, it says it doesn't happen for, for example, a denial for such reasons as a statute of limitations bar. So I mean, that, I think that's the strongest argument you have to be. You have to say the Supreme Court has construed this statute, or at least paraphrase this statute, as applying to only on the merits determinations. Oh, by the way, four years beforehand, we said, kicking a case on statute of limitations isn't on the merits. So what do you do with that? You're going to say, oh, that's just a gloss? Oh, that's dicta? Oh, that's not needed? I think it's sort of, to a certain extent, kind of procedural issues can dip into the waters of the merits of the case. You know, in state post-conviction relief act matters, there's oftentimes an overlap of a procedural issue versus a merits issue. So I don't think that the language is exclusive as to that, your honors. I guess that'd be, at this point, my response to that. So let me just tease out your response. Are we saying that, look, this isn't your standard statute of limitations issue where we just have to look at the docket of a case and say, what day was this case decided? A year went by. Was it over or under a year? This one builds in some other substantive component to it, the exercise of diligence and whether that was required. And because that substantive component is now injected into this case, this is not, this blurs into and gets us closer to an on the merits determination that would be governed by the COA requirement 2253C1A. Yes, your honor. And to kind of piggyback on what was mentioned during the appellant's argument about, are there possibly two different due diligence requirements? You know, one as it specifically pertains to Brady. And then when we deal with Brady, we have to deal with what is the government doing? Is the government withholding information? And so how can someone in a defendant's position be expected to find something that would have no reason to exist? So we're completely cognizant of that. But when you deal into a collateral review and, you know, after the direct appeal in this matter, a post-conviction relief act attorney would be reviewing this case. He'd be reviewing the transcripts. He'd be reviewing counsel's original file. He would be looking at what happened with the witnesses. He would see that the impeachment came out during, you know, during direct examination. He would look into the deals. He would pull the transcripts. He would check the publicly available documents. I don't think that this case necessarily implicates Brady because the government can't withhold information that's on the public record. I mean, we could tell his attorney. Let's come back to that in a second. But on Judge Rips' question, why is what you're describing you'd have to look through? Why does that make the statute of limitations issue here any less procedural and more merits than any time you've got a fair notice issue that's informing a statute of limitations? I mean, when something was reasonably discovered or the plaintiff or defendant, as the case may be, had fair notice of their claim, isn't this just a species of that same type of statute of limitations, which seems ubiquitous? It's a very fine line, you know, I'm seeing in all this. And, you know, merits, the procedural issue inevitably intertwines with the merits issue because we're talking about kind of how, what does due diligence require in this case? What was the evidence? What should he have been looking for? And while there's not, you know, an overt requirement under Brady as to what he needs to seek out, you know, how does what happened in the case, the evidence that came out of the case, relate to this new Brady claim? Should he have discovered it sooner? I don't want to make a concession that large, Your Honor. It's just binary. Is it, does it apply where it's a, it's a COA required for a 60B motion dealing with a procedural issue? What's the government's position on that as opposed to on the merits? I don't think that there would be one necessary for procedural issue, Your Honor. So, so not, not, not to jump in on Judge Krause's line of question, but let's just say that there was a rule 60B motion that was challenging, not any component of diligence associated with the statute of limitations, but just did a year pass or not. And all we need to do is look at docket entry times. And someone says they did. And someone says they didn't. That's all we need to do. It's statute of limitations, but we aren't doing anything beyond comparing entries of docket times. Think COA is needed there? Or you think that we can overlook Morris and rely on, on Gonzalez and Harbison and the doubt we've questioned those with and Wilson and just say no COA in that instance? I don't know why it seems an almost indebatable issue, the computation of time. I don't think COA would be necessary. I don't think, you know, jurists of reason could really debate hard, cold calculations of time. But, but, but in Morris, we kind of issued a little more of a bright line rule than, than, than this, right? So, I mean, you're, you're, you're telling us it's okay to retract a little from Morris, just not as much as in this case. I understand your honor. Yeah, I just, I just don't think this is the case for your honors. Maybe I can ask the question in a slightly different way. Did Harbison, in your view, carve out a change in the COA requirements for collateral matters or procedural matters, leaving all the merits aside? And is there a difference between a collateral matter and a procedural matter? Certainly, your honor. I do think there is a difference between a collateral and a procedural matter, because I don't think a collateral matter would necessarily have to be a procedural matter. I think, you know, not every collateral matter involves a procedural matter in every instance. So can you give me an example of where something might be collateral, although appearing procedural or procedural when in fact it's collateral? Sure, your honor. If I may just have a minute of court's time just to come up with one. You know, in state court, a collateral issue that someone would try to appeal would probably be a denial of a motion for bail. That would be a collateral order to an underlying criminal prosecution. And I don't think that's really a procedural matter of the case in terms of the procedural posture that any particular case takes. Mr. Leitch, let's say we ultimately disagree with you about whether the question of the statute of limitations is a procedural one versus a merits one. I understand you're arguing that it relates to the merits here. But if we assume that it is, in fact, a procedural question, as the Supreme Court seems to have indicated, and we accept the premise to which you conceded that a COA is not required, or where there's a procedural ground for the decision, then doesn't that mean that the district court here necessarily erred in concluding that it couldn't reach the question of reopening because of timeliness? Yes, your honor. So then the district court would need to move forward with the 60B motion as to the merits of reopening. Yes, your honor. Before it reaches the underlying substantive, I believe, breaking question. Okay. Let's take the other path. Say we decide that a COA is required. Why shouldn't it be granted here? You were getting into the issue of whether there is a due diligence requirement or not. And again, while we're at time, we're going to allow you to proceed as we did in your adversary. Thank you, your honor, and I apologize for briefly interrupting you in the beginning. I guess to take it to my full logical extent that we don't believe this is a Brady matter for the sole reason that we can't suppress public information. Again, when a collateral attorney is appointed to represent someone such as Mr. Bracey, he starts with the transcript. The transcript is going to put him right on to the details that he did have some agreement with the commonwealth. Did you point that some agreement is not sufficient if there is evidence of other agreements or details that could have been used for purposes of undermining the witness's credibility? And because, as opposing counsel highlighted, there is no really factual record with respect to what the full extent of the deal was. It's perfectly plausible, given the case at this juncture, that defense counsel was apprised of the full extent of the agreement, assuming, again, that there was some further agreement, which, you know, that's a whole other question for an evidentiary hearing. Well, as there hasn't been an evidentiary hearing, we don't have that information, and we're looking at the question in the abstract. Doesn't that mean that it's necessarily debatable, that there needs to be record development on these issues? I would say it would still fail the third prong, your honor, and possibly the second prong, in that it's a cumulative kind of impeachment that would be happening here. And, you know, to what extent would counsel be using this, beating a dead horse and losing candor in the eyes of the jury by, you know, trying to impeach a witness whose testimony has been corroborated by two witnesses whose veracity Mr. Bracey has never assailed. I have trouble reconciling that with both Banks and our decision in Dennis, because those cases, you know, both the Supreme Court and our court have taken on the notion that it's simply cumulative, because there was already some impeachment evidence, if there's other material impeachment evidence available. And, you know, on the question of whether it's indeed available, Dennis was explicit that what we were dealing with there was an argument, just like here, that it was publicly available. And we said that the requirement, nonetheless, is on the prosecution under Brady to make disclosure. It's not a requirement of due diligence of defense counsel to scour all public records looking for something where the government has represented that it's fulfilled its obligations. And we still don't know that, Your Honor. We don't know that the government, you know, didn't actually disclose the full extent of it. And so, I mean, just based on this record, I just don't think he can get there, Your Honors. I don't know, but if it were true that that could substantiate a Brady violation, doesn't that require that there be some record development? It would probably, you know, ultimately, as in terms of resolving the issue, be best practice to establish some record as to what actually happened here. But there's just so many ifs as to this information that I just don't think it's strong enough at this point. And again, even, let's say that we didn't even have those two witnesses testify that we're dealing with here. Their testimony was cumulative of everyone else's testimony. And Bracey tacitly admits his involvement here in his letters to Plummer Sr. saying, I can get this from murder, you know, specific intent on the voluntary manslaughter. He's not saying, he's saying, what can I do to make my story better? You know, I just don't think it does anything here to really compel a different verdict. I mean, the question is this, I mean, that goes the ultimate merits of the habeas petition. I mean, it does. You know, I mean, we aren't here, at least we aren't here primarily to get to those merits. I don't, you know, that doesn't play prominently in the briefing, other than maybe for atmospheric effect. And so I guess my question is, we're here because we're trying to evaluate at least as the last question, whether or not this was a timely filing. And it strikes me that your position says, no, it wasn't because this could have been reasonably discovered before. Your adversary says there's no obligation in the Brady context to do any investigation during trial or post trial. He says, you can't expect, just like you can't expect a defendant to scavenge for evidence pre-trial in the Brady context, nothing changes post trial. So don't you have to beat that argument? Don't you have to say something changes post trial? Because we've got a bunch of cases that say that criminal defendant doesn't have this obligation pre-trial. You have to show that somehow a diligence obligation is now imposed on a criminal defendant who wants to pursue habeas relief post trial. Where does that come from for you? You know, relieving counsel, trial counsel, of the obligation to investigate a case is, you know, a counsel's failure to investigate a case is almost per se an effect on this. Counsel has, I mean… Let's talk post trial because I don't think you're going to get around, I don't think you're going to get, I mean, you're talking about two obligations. Counsel has an obligation to investigate a case. True. Totally true. Government has an obligation to disclose Brady Giglio materials, Jenks materials, other materials. That's true. So let's not talk about, the key point that I think you have to do if you want to succeed is to say no, there's a post trial obligation that's separate and distinct from the pre-trial obligation. I mean, does that come from 2254 D1D where it says this is a statute of limitations and if you miss a year, you don't have, you have to engage in due diligence or does it come from somewhere else or does that not do it? I mean, as your Honor said, written right into the statute, I mean, there has to be some base level of diligence here. I mean, I just don't, it's almost, as I don't know what to say at this point, it's like, yes, I mean, there's no affirmative duty to find what is hidden under Brady, but, you know, this isn't hidden. We're not doing anything. Where does it stop? I mean, what publicly known information do we have to disclose to a defendant before, like, I mean, every news article that was written about the case? Maybe the publicly known information in your, in the government's possession, custody or control, maybe that? I mean, sure, but every prosecutor, every prosecutor in this office deals with hundreds of cases. How is, you know, every publicly available piece of information that would be relevant to any case? I mean, that's just. No, no, just, just, just the ones in the case file. Let's just say just the ones in the case file and just the ones that you can know through, you know, your witness meetings. You know, if something's in the case file and it's helpful and exculpatory to the defendant, I mean, that has to be disclosed, you know, assuming it's not work product or anything of that nature. I think that we're talking about two different things here. If you agree that it's, it is the kind, let's assume it's the kind of material to which Brady would apply pretrial and would mandate disclosure pretrial for that type of information. You agree that that is likewise post-trial, that that is not something that would eviscerate a defendant's ability to bring a Brady claim by, by informing some, resurrecting a due diligence requirement that didn't exist pretrial. I think anything that would qualify as Brady material pretrial would be subject, like you're saying, post-trial to the same, same, you know, framework. So that would not be counted. It should not be counted in, in terms of the diligence requirement for, in other words, putting it in a different way, to the extent that that was not discovered, there would be equitable tolling of that statute of limitations for the petitioner. I think, I think it would, it would absolutely be toller for any, for any material that was withheld by the Commonwealth, assuming that it does qualify as Brady material. Do my colleagues have other questions at this point? No, thank you. Okay. Thank you, Mr. Leisich. And we'll hear back briefly from Mr. Bray. Thank you, Your Honor. Yeah, you know, quite simply, I, I would argue that the Commonwealth has pretty much conceded the points that we're making here. Judge Beadlestone, to your point about trying to distinguish between a Rule 6 to B motion, whether it is a procedural motion or a collateral issue motion, you know, if you apply the Gonzales test, you don't have to make that distinction. Because it doesn't matter if it's a procedural, if it's attacking a procedural issue, or if it's a collateral issue. What you look at is, does it go to the underlying merits? Does it advance a, a, a, is it a rehashing of the same claim that's been denied in the habeas? Or is it advancing a new claim that wasn't brought up through, through the system? Anything else falls under Gonzales as not on the merits. And, you know, as Judge Fitz, you know, reading from, from the case, you know, Gonzales was pretty clear, and they specifically, specifically say, application of a statute of limitations is not an on the merits determination. So, so we would argue, certificate of appealability is not required. And then. What do we do with the fact that every circuit, both pre and post Gonzales and Harbinger, has concluded COA is required? I mean, aren't you asking us, you know, even, even with those cases now in the rearview mirror, to create a circuit split? Yeah, yes. Yes. But, but I think a reason one, based upon what the Supreme Court has, has thrown out there. I mean, so let's, let's just, let's just talk about the Supreme Court's thrown out there, because I mean, not everything that the Supreme Court throws out there is a binding hold. Some of what they say is dicta. Some of what they say is helpful. It's guidance. It's dicta. And so I think you've got, you've got this, you've got this really big tension between I don't, you know, I don't know that this footnote for Gonzales is anything other than dicta, because that case didn't involve statute of limitations or failure to exhaust or other things. And at the same time, Gonzales recognizes what many courts of appeals do seemingly with approval. So, so, so it's really hard to reconcile those two, because if they were doing it wrong in the statute of limitations context, there wouldn't be a page and a half later talking about, yeah, most of them do it. At the same time, don't you have to deal with the fact that Harbison starts to feel a lot like dicta too, because really it's just putting a gloss on the statute. If we were to accept that as true, then we'd have to ignore statutory text, which doesn't include the merits language. So, I mean, it seems that a lot of the other circuits still go this way. Not all of them are recent decisions that go this way. Some of them are before these two cases. But when they go this way, I mean, maybe the reason they do is because they don't find these statements as holdings and they don't find this dicta as powerful enough to interfere with their prior precedent. Why shouldn't we do the same thing? I think, Your Honor, that most of the cases that hold otherwise, from my suggestion, that do impose a certificate of appealability requirement on a Rule 60B motion are pre-Gonzalez and or pre-Harbison. I'm not sure there's been much after Harbison to continue. And I would argue, look, so I mean, not to interrupt, but if Gonzalez and if Harbison changed the state of the law dramatically, wouldn't you expect those other circuits who previously resolved it contrarily to fall like dominoes? Well, I mean, you need the right case to make a determination on. And when we're talking nationwide jurisdiction of any of these circuits have ever done it before, surely this is this the first case, you think? Well, I would argue that this is an ideal case because, you know, I would argue that this case fits squarely within what Gonzalez is talking about. I mean, Gonzalez, you know, Gonzalez ended up determining that because Petitioner 60B motion challenged only the district court's previous ruling on the statute of limitations, it's not the equivalent of a successive habeas petition. And therefore, the certificate of appealability doesn't work. I mean, that's what we're talking about here. You know, Mr. Bracey's Rule 60B, it doesn't challenge an underlying merits determination. It doesn't rehash issues that have already been before the court. All the challenges. Counsel, how can we adopt your position without blowing wide open the floodgates of all of those petitions that would come on the denial of any 60B motion on a statute of limitations or on other procedural grounds? I mean, you're essentially arguing, if I understand you correctly, that we should take those cases in sub salientio overruling Slack v. McDaniels. It's hard to imagine that that was what the Supreme Court had in mind. Well, you know, prior, remember, prior to the certificate of appealability requirement of the ADPA, we wouldn't be having this discussion. 60B, you know, there are still protections within 60B. I mean, you still, you could, it would be appealable in the normal course, but that doesn't mean that it's an underlying decision. You would still have to show the extraordinary circumstance justifying 60B relief and all that. So, and that, all I can say, Your Honors, is I think, I would not dismiss the language in Harbison and Gonzales. Well, actually, I know you wouldn't dismiss it, but I think what you're actually doing is you're elevating that language above the statutory text of 2253, which doesn't mention on the merits, does it? It does not. It does not. So you want us to give dicta greater weight than statutory text? Well, what I'd like you to do is look at the rationale and the analysis that led the Supreme Court to determine that. And elevate that over statutory text. Yes, yes. I mean, it's Supreme Court, it's the Supreme Court interpretation of what the text means. And I mean, respectfully, I think that's binding on this Court. Now, whether you agree with me that it applies in this circumstance is different. But if it applies, I mean, that's Supreme Court precedent. All right. Mr. Gray, unless there are other specific questions from my colleagues, we are over time again. But we do appreciate how helpful both counsel have been with their arguments and their briefing. Any further questions from my colleagues? Thank you, counsel. Thank you, Your Honors. Thank you for your time, Your Honors. Take the case under advisement. Thank you.